R. Rammick on behalf of Cannon Falls Area Schools. This case is really about a single issue which is the interpretation of the insurance policy at issue here. Cannon Falls was insured by Hanover. They suffered, the schools suffered a hailstorm loss which caused dents to their metal roofs. The policy covers that as direct physical loss and both parties agree that that's covered under the normal part of the policy. But then Hanover contends that there is an exclusion for cosmetic damage that applies and we disagree that that exclusion applies. There's two real points to figure out if this exclusion applies in this and that's the direct interpretation of the policy on a technical level. Let me ask you something that's bothered me in other cases. Of course, interpretation of a policy like interpretation of a contract is ultimately at least a question of law for the court. So what case best describes the standard of review, the application of that standard review to a fact-intensive exclusion? Certainly, Your Honor. I think the Quade case out of Minnesota Supreme Court as well as the Bluff case out of Minnesota Supreme Court both go through some of the standards in terms of going. I know what the words, I know the words that are used, but I mean the application. Yeah. So this application in terms of this cosmetic The expert dispute is clearly fact-based. The expert dispute part is, and that's the issue that we're getting at here, Your Honor, is how do we review the resolution of the expert debate, assuming we don't buy the argument that it should have been excluded? And the issue that we're arguing is the interpretation of the policy such that then They're amplifying the policy, right? I get you, Your Honor, but To a fact-intensive situation and reach different opinions and slash conclusions that we're supposed to review as a matter of law, how do we do that? The matter of law part is that the district court applied the exclusion as a dichotomy to say either it still prevents water from entering, yes or no, and our interpretation is that because it says it prevents it to the same extent, our argument is that it's reduced how much snow and wind load it can hold. So the district court applied the wrong standard in interpreting this policy by saying that the only question I think an underwriter would just scratch his head and say, what a bunch of gibberish. You're peddling. Me? Yeah. Well Because you, like almost every lawyer in these kinds of cases, refuses to get at this question. Well, the heart of it, Your Honor, is really what it should apply to or what it shouldn't apply to. In this question Yes, and that's fact. That involves a question of fact. The court never got to the question of fact. We have different experts that are competing to say it did reduce how much wind and snow load. Their expert says that it doesn't. That's why I started you with a question that it's not in the briefs, not in the district court's opinion. And in my experience in contested exclusion cases, no lawyer ever wants to talk about this. Oh, it's a question of law. The interpretation of the exclusion part It's not a clear error or abuse of discretion analysis of either expert. Correct. We're just talking about If we don't knock them out under Dobbert Yeah, and we're not even getting to the experts yet. I'm not going to write along as a matter of law on facts. Well, we didn't get to the expert analysis at all in this case because the court said it doesn't matter if its wind and snow load has been reduced. That's what our expert opines and their expert disagrees. A remand, right? Yes, a remand back with a different interpretation of the policy exclusion. Because they applied it and so this is A different interpretation with the same lingering question unanswered. We would still have an unanswered question in terms of the experts and their battle. We would have that issue yet for the district court to decide. But if the policy application is wrong, then we've just We've gone with the wrong legal standard to apply to their expert opinions. The court didn't get to the expert opinions. And in fact, there's in the Canon Falls reply brief on page 10 through 12, There's some good photos that show the difference between a metal piece That if it's dented, its only function is to prevent the intrusion of water. Such as caps that go on a vent ridge. And so if the question is simply does it continue to exclude water From getting into the vent, then that can be a dichotomy question. It does or it doesn't. The problem in this case is that these roofs are the actual structural support. They're huge dome metal roofs that go over. And so the argument here is that these metal roofs, when they're dented, Canon Falls expert took samples of it and said this roof, as dented, Is less strong than the roof that's not dented. And because What do you do about the elements? It's sort of a present tense barrier to the entrance of the elements. Exactly. And that is, it is a current damage. The point is, so for example, if the roof used to be able to hold 6 feet of snow, And now it can only hold 6 inches of snow, It's still technically preventing intrusion of water, wind, But it's going to fail at a much lower rate. So it's not preventing it to the same extent as it did before. It would have normally prevented 6 feet of snow pack on these roofs. But it's weakened such that it will prevent less. That failing event just hasn't happened yet. Which is fortunate. But if it were, say it were reduced by 95% And now all of a sudden it's only 2 inches of snow, It's not going to snow all summer. So you'd wipe out the exclusion. I wouldn't wipe out the exclusion, no. Yes, you are. No, in fact, on page 10 and 12, Your Honor, there are You insist not. Correct. But this will go back to the insurance people on the East Coast. Just like the environmental exclusion. Sure. Rewritten 2, 3, 4 times. Yes. But the way that it's written right now, And, in fact, there's actually an example of that. There's a different case that the district court cited That has a different form of the exclusion That doesn't use the words to the same extent. And it focuses specifically on the intrusion of water. This one focuses on the elements overall and to the same extent. Because this is a structural support issue, Our argument is when that amount of structural support has been reduced, That is an effect as to how much it can prevent intrusion of the elements. Again, the elements aren't entering right now, But it's preventing less. It's like saying your car runs or it doesn't run. That's a dichotomy, yes or no. But if it ran at 60 miles an hour, And somebody steals the catalytic converter, It only runs at 30 miles an hour, You wouldn't say that it functions to the same extent. Does it run? Yes. It ran before, it ran after. But does it run to the same extent? No. And that's what we have here. These roofs do not function to the same extent as they did before. Because they've been weakened. They will fail at a lower snow load and a lower wind load than they did before. I'd like to reserve some time if you have a question, I'd answer it now. Thank you. May it please the Court, Scott Johnson appearing on behalf of Appalachia Hanover. The Court should affirm the judgment because the District Court correctly determined that the cosmetic damage exclusion precludes coverage for the school district's claim. This is, in our view, a case of contract interpretation, question of law. The exclusion expressly applies to cosmetic damage that does not prevent the roof from continuing to function as a barrier to the entrance of the elements to the same extent as it did before. Does is a present tense verb. So it doesn't contain the future tense connotation that the school district claims. Why couldn't you read that as saying, in this current moment, it does not protect it, function as a barrier as much as it did before? At this moment, it just can't sustain the same amount of snow weight. Before this hail damage, it functioned as a barrier to the elements. It kept out all elements. After this hail event, the same situation occurs. But you're ignoring to the same extent. Correct. And their expert says that it won't stand up, it won't take the same amount of rain or snow as it did before. So it's not to the same extent. Why doesn't that create a triable case? Well, it's not a triable case because, first of all, they didn't raise the question of, there's an issue of fact that precludes summary judgment. Both parties below agreed there was a question of law. They didn't raise that there was an issue of fact and the court should hear the expert testimony. The court considered the expert testimony. I think it's a sort of a combination. I think Judge Kelly's question was going to the legal interpretation, which they clearly did raise. And then when you combine that with the expert, it creates a fact question. Well, I disagree. Because I think the court correctly looked at the expert testimony and really decided it doesn't matter. Because it's a present... It's in comparison to the legal question of how you're interpreting this. It does. And because it's the present tense verb does, means it's a present impairment of the Bruce ability... What's wrong with Judge Kelly's question, or maybe address Judge Kelly's question? At the moment, it doesn't, according to their expert, to be believed, it doesn't, to the same extent, hold it capable of sustaining as much rain or snow as it did before this event. So then we'll call that their maybe someday theory. Their what? Someday maybe theory. Someday maybe this roof will fail. That's what their expert is essentially saying. Can we go back to, like, today? If there's test, if there's evidence, expert evidence that at that moment, it can't sustain as much weight. Not that it's broken through, but it just doesn't function as the barrier to the same extent as it did before. So we're still in the present, not in the future yet. Isn't that one way to read it? I don't think that's the way to read it. And the reason I say that is because there are exclusions that address that very issue. And we cited one in our, it's in the brief, it's also in the addendum, page four, and also the separate appendix at page 266. It's a Hartford exclusion that is essentially the same as ours, including to the same extent language. And it has at the, after all, the same extent language, and for the anticipated useful life of the roof. In other words, the future. Without that language, we're only talking about the present. It still functions as a barrier to the elements. It did not leak. It did not have any elements penetrate the roof after these shallow hail indentations. It continued to function as a barrier to the elements. And it's done so for four years. And their theory is, again, maybe someday, this roof will fail. But that's pure speculation and conjecture. And that doesn't defeat summary judgment. And the handover policy does not include that language that the Hartford policy has. It includes only the present language, does. The present tense verb, does. It doesn't have a future tense connotation that the school district contends it does. You concede that the exclusion will still apply and the duty to defend will apply if something maybe happens? Well, this is the property policy, so there's no duty to defend. Are you talking about someday in the future? Yeah, the day in the future happens. And there's clearly at the moment, at present, damage that is from a covered risk. The policy's still in effect, let's assume. Well, the policy expired some time ago, of course. I mean, if damage occurred during the policy period, it would be covered, assuming the other conditions of the policy are satisfied. So Cannon Falls needed a second windstorm that year? Well, they continue to carry insurance on their property. If the roof were to fail, they can make a claim under their then existing insurance policy. You know, the example they give in their reply brief is, they say, well, if this roof had basically caved in but still didn't leak, Hanover's position would be that that exclusion still applies. No, that's not our position. The exclusion only applies in the event of cosmetic damage. And cosmetic damage is marring, pitting, or other superficial damage. Caving in of a roof is not superficial damage. And that's all we're talking about here. Shallow hail indentations to the roof. And they do not presently impact the ability of those roofs to act as a barrier to the elements. They continue to resist the elements, just as they did before that hail event. And their argument essentially is, okay, every instance of hail will dent the roof and damage it to at least some extent. Even 1%. And in their view, in that instance, exclusion doesn't apply. So when does the exclusion apply when you have superficial damage? If every hail dent results in some impairment in the future, or some reduction in the useful life of the policy, or of the roofs. And there's no evidence, by the way, of any reduction of useful life. That's why hail coverage is so expensive and difficult to find. That's correct. And that's the decision that they made in this case, to purchase a policy at a lower premium that has a cosmetic damage exclusion. They could have purchased a policy without the exclusion, and then they'd have a new roof. But they bought a policy with the exclusion. They bought a policy that's drafted in the present tense, not the future tense. They have a roof that has shallow hail indentations that continues to function as a barrier to elements. And their testimony from the 30B6 witness is, we're not going to replace that roof if we don't get any money from Hanover. There's no concerns by the school district that this roof is going to fail. At any time, they have no concerns. They're not concerned about the structural integrity of that roof. Well, the expert expressed some concerns that conditions in that area were such that it may well fail given the amount of snow that comes in that area, right? He did express that. But, you know, keep in mind, he never tested the high school roof. Yeah, but that goes to cross-examining him, which I suspect you could do pretty effectively. But we're not, you know, at this point, we have to take it for what it is. Yeah. And again, in their brief, they talk about imminent risk of failure. Seriously, you saw the pictures of the roof. These are shallow hail indentations. There's no imminent risk of failure. There's been no damage. Yeah, now over four years ago. Yeah, now over four years ago. Again, the school district testified. They don't have any concerns about the structural integrity. They didn't replace the roof. If there was an imminent risk of failure, I guarantee you the school district would have replaced those roofs. They're not going to take the liability issue and discard that with children in the school. So, I see my time is about up. I just want to conclude by saying, again, we think the court should affirm district court because the court properly applied the cosmetic damage exclusion to the school district's claim. Just a quick question. Yep. Your position is that the cosmetic damage applies unless there's a leak? Well, no, unless there's... Well, a leak is only one way. You know, it's a barrier to the elements. The elements can be rain, primarily, but any kind of moisture, even sunlight. But these roofs don't allow any elements into the schools. They still function as a barrier to the elements. To follow, I understand you're taking the position that if it collapsed, we wouldn't do that. But I think one could, if one bought into your position, read it that way, that if it collapsed and it didn't leak, it's cosmetic. No, because there's two parts to that definition of cosmetic damage. And the first part is it's got to be pitting, marring, or other superficial damage. A caving in of a roof is not superficial damage. So, that would not be an instance where the exclusion would come into play. Well, I don't know if there's case law, but I think it's pretty plain, you know, a plain interpretation of the policy language that a caving in of the roof would not be considered superficial damage. Any other questions? Thank you. Thank you, Your Honors. Rebuttal? Thank you, Your Honor. I want to address right away is that once you have an insurance claim, you have to resolve the damage at that time. Under statute for hail, you have one year for a suit limitation deadline. Some policies have up to two years. But you can't take a wait-and-see approach to wait to see if it lasts three to five years. The roof is supposed to last another 30 years. And if it fails in 10 because of this hailstorm, we can't pin that on the next insurance company. If it damaged because it was insured at the time of Hanover It depends on the policy you buy. Your Honor, if it's Usually, yes, they do have that kind of a time if it's claimed. And of course, it depends whether it's claimed or not. I mean, the application of this is going to apply to I mean, it's going to apply to all cases. And so for creating a standard like this, it's going to say even if its strength is reduced by 90%, so that for the example of a six-inch snowstorm, well, if that doesn't happen for a year and a half, a dry winter, for example, in Minnesota, and then it fails a year later, well, that insurance company is going to say, Hold on. Six inches of snow should not cause this metal roof to collapse. That damage actually occurred under your previous policy. So they're going to deny it, saying it's not actually a snow weight collapse. It's a hail damage issue from two and a half years ago and Hanover is off the hook because they denied it for long enough. We need to assess the damage now, which is what our expert did by taking panels and testing it now to prove that the strength has changed from what it was before to what it is now. And that's an actual damage now. That's a claims made versus claims submitted issue. Yeah. For all policy, they're occurrence. They're not claims made. Like legal malpractice is a claims made policy, and so that's whenever the claim is made, that's the insurer that's on the hook for it. All property policies are an occurrence policy, so it's whenever that damage that's subject to the issue occurred, that's the insurer that's on the hook for it. But that time span is only one year under a hail statute, two years sometimes under the policy. So if it's beyond that, you can't go back to them to say, hey, this was an occurrence from three years ago, and therefore you owe it. That's why we do the assessment at the time. So the district court never got to the analysis of experts because they applied this legal standard that just said it doesn't matter if or how much it's been weakened. It's only if it leaks now. If it didn't leak after, then it's only cosmetic. And that was the standard that they applied, and that's the standard that we're challenging here because that would be very dangerous to apply to all cases, including this one. And I'm out of time, but I'm happy to answer any questions if you had any. Thank you. Thank you, Your Honors. The case is clearly briefed, and the argument's been very helpful, and we'll take it out of your drive box.